IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EMERGENCY FUEL, LLC, et al.,

v.            CIVIL NO. CCB-00-CV-156

PENNZOIL-QUAKER STATE CO.

...oOo...

MEMORANDUM

This court has received and considered Plaintiffs' request for reconsideration of the order in this case dated March 7, 2002. Plaintiffs repeat several arguments that were previously asserted in their opposition to Defendant's motion for summary judgment and subsequently considered by the court. The court remains unpersuaded and finds that U.S. Patent Nos. 6,110,237 ("'237 patent") and 6,113,660 ("'660 patent") are invalid for violating the on sale/public use bar and U.S. Patent Nos. 5,681,358 ("'358 patent") and 5,938,799 ("'799 patent") are invalid due to lack of enablement.

First, Plaintiffs argue that the '237 and '660 patents are not invalid under the on sale/public use bar because the prior art, Spare Tank, does not disclose each claim limitation of the two patents. The Court found, and continues to find, that Pennzoil met its burden of establishing by clear and convincing evidence that each claim limitation was anticipated or made obvious by the corresponding component of Spare Tank. See Order at 7 (citing Def. Ex. 10; Def. Ex. 12); see also Pfaff v. Wells Elecs., Inc., 124 F.3d 1429, 1436 (Fed. Cir. 1997), aff'd, 525 U.S. 55 (1998) ("The on-sale bar is not limited solely to a sale of, or an offer to sell, a product



that anticipates the later patented invention. It also applies if 'the subject matter of the sale or offer to sell . . . would have rendered the claimed invention obvious by its addition to the prior art.'") (citation omitted). Plaintiffs dispute that the Spare Tank product had an octane of 86-88 or higher when it was offered and used in 1997. Plaintiffs argue that "the first evidence that Plaintiffs produced a product with an octane range of premium grade gasoline does not appear until November 23, 1998." (Pl. Reconsideration Rep. at 3.) In fact, as cited in the March 7 order, Pennzoil offered evidence that Plaintiffs produced a product in 1996 that had an octane of 90 and a flash point of 110°F. (See Def. Ex. 12 to Public Use Motion.)

Plaintiffs next argue that the '358 and '799 patents enable one skilled in the art to make and use the claimed invention, contending that the '358 and '799 patents taught to increase octane. The court addressed this argument in its March 7 memorandum opinion and continues to find that since "[b]oth the '358 and '799 patents actually taught not to increase aromatic content," they, therefore, failed to teach to increase octane. Memorandum at 7. This finding is partially based on the fact that the more recent patents teach that to fulfill the smooth and clean engine operation requirement, one must increase aromatic content. (See Hubbard Feb. 2001 Dep. at 151, Def. Ex. 2 to Enablement Motion (suggesting aromatics should at least be in the 70 percent range)). Additionally, Hubbard testified that the first patents that taught how to achieve an octane number of 86 were the '237 and '660 patents. (Id.)

Plaintiffs next argue that the court made a number of incorrect statements in its memorandum opinion. First, Plaintiffs argue that the court mischaracterized Hubbard's testimony on two occasions. After viewing the videotaped deposition testimony attributed to Hubbard, however, including its surrounding context, during the January 18, 2002 hearing, the

court concluded and continues to believe that Hubbard in fact testified that the first applications that taught how to achieve the 86 to 88 octane level were the '237 and '660 patents, and that fuels having an octane below 86 to 88 have a running problem. Second, Plaintiffs argue that the court incorrectly states that the '237 and '660 patents require high aromatic content, however, Hubbard testified that he would need aromatics in at least the 70 percent range to achieve an octane number of 86. (Id.)

Finally, Plaintiffs argue that claim 13 of the '237 and '660 patents, which allows for the "smooth operation" of an internal combustion engine, calls for an octane number of 65 to 75, rather than 86 to 88. As stated in the March 7 memorandum opinion, "in light of Hubbard's testimony and the fact that every other claim explicitly requires an octane of at least 86, it is clear the plaintiffs were calling for an octane number in the 86 to 88 range." See Order at 6 n.3; Hubbard Feb. 2001 Dep. at 60-61, Def. Ex. 5 to Public Use Motion (stating that "if you're not in that range [86 to 88], then you're – you're probably going to have a running problem").

None of Plaintiffs' repeated arguments have convinced the court that it erred in the March 7, 2002 order. Accordingly, Plaintiffs' motion for reconsideration will be denied.

4/23/02
Date

Catherine C. Blake
United States District Judge